## Robert J. Menner et al., Plffs. in Err., v. A. S. Nichols et al.

If the record in proceedings to designate a curtilage subject to mechanics' lien, under the act of June 16, 1836, contains no irregularity, the decree will be affirmed on certiorari.

In such proceedings the court has power to set aside the report of the commissioners and appoint others.

The act requires notice of the appointment of commissioners to be given to the parties interested, but requires no notice of the time of view.

The extent of the curtilage necessary for the use of the building rests in the discretion of the commissioners and the court below.

(Argued February 22, 1887.  Decided March 14, 1887.)

---

NOTE.—The method of determining the curtilage, where there is a dispute as to the land bound, is now fixed by the act of June 4, 1901 (P. L. 431) § 23.

July Term, 1886, No. 36, E. D., before GORDON, PAXSON, TRUNKEY, STERRETT, and CLARK, JJ. Certiorari to the Common Pleas of Wayne County to review a decree designating a curtilage subject to mechanics' lien under the act of June 16, 1836. Affirmed.

The case is stated in the opinion of the court below.

The following exceptions to the report of the commissioners were filed by judgment creditors of W. H. Dimmick, the owner of the premises:

I. The report and draft accompanying the same is imperfect, defective, and insufficient for the information of the court, in not indicating the situation or location, upon said tract of land, of the three-story building, known as the Irving Cliff Hotel building, mentioned in the petition, and in not setting forth that said building is situate upon the tract of land designated in the report as "necessary for the convenient use of said hotel building."

II. The report and draft accompanying the same is imperfect, defective, and insufficient for the information of the court, in not mentioning or describing any of the improvements upon said tract of land.

III. The report and draft forming part thereof is imperfect, defective, and insufficient for the information of the court, in not indicating the location of the following described buildings, situated upon said tract, and in not setting forth that said buildings are situated thereupon, *viz.:* (1) a two-story frame dwelling house, 16 by 24 feet, with a two-story wing, 14 by 16 feet, and a one and a half story wing, 14 by 18 feet; (2) a two-story frame barn, 26 by 36 feet; (3) a one and a half story frame dwelling house, 20 by 30 feet.

The first-mentioned house is situated about 25 feet from the road indicated in said draft as the "public road to Honesdale;" said barn, about 50 feet west of said house, and the last-mentioned house about 200 feet from said road; said buildings, in fact, being all situate upon said land, about ¼ of a mile from the hotel building aforesaid, having no connection therewith, and not being at all necessary for the ordinary and useful purposes thereof; and none of the labor and material, for which the

claims of the petitioners are filed, having been done, used, or furnished in or about their erection and construction, or upon the credit thereof.

IV. The buildings mentioned and described in the third exception were erected many years before said hotel building was thought of, are remote from and in no way connected with it, are not necessary for its convenient use; the labor and materials for which the claims of petitioners are filed were not furnished upon the credit of said buildings, and they cannot by law be subjected to mechanics' liens for such labor and materials.

V. The amount of land set apart in said report, *viz.:* 23 acres and 62 perches, is an unreasonable quantity and excessive amount to subject to mechanics' liens. Such tract is not properly curtilage appurtenant, nor is it necessary for the convenient use of the said hotel building, for the ordinary and useful purposes thereof.

VI. The report includes a lot of land situate a considerable distance from the hotel building aforesaid, upon which is erected a pavilion, or dance platform, constructed of lumber furnished upon the credit of Wm. H. Dimmick, after the Irving Cliff Hotel Company had purchased the land, and after the said Irving Cliff Hotel Company had distinctly notified the person so furnishing the same, that he must look to Wm. H. Dimmick for his pay therefor; the said dance platform being altogether a distinct building, not having been intended to be used in connection with said hotel, and not being necessary for the convenient use thereof. Gross injustice would therefore be done judgment creditors, were such structure and lot now made liable for the debt incurred in the erection of said hotel building.

VII. The report, if confirmed, would work great and irreparable loss and damage upon these exceptants, who advanced many thousand dollars to aid in completing the building, at a time when the foundation alone had been erected, and before the mechanics' liens had attached. If such report is confirmed, great injustice will be done exceptants.

VIII. Exception is filed to the statement in the said report in which the commissioners return "that having been duly sworn, they went upon the premises, examined the building and the land carefully, all of us," as false and misleading.

IX. Improper conduct upon the part of all of the said commissioners; they having come to Honesdale in response to per-

sonal letters sent them by attorneys for mechanics' lien creditors, and having almost immediately upon their arrival gone upon said premises, at the suggestion and instance of one of said attorneys, in his private conveyance, and accompanied by him alone; the said commissioners examining the premises and building aforesaid with said attorney, and without any other person being present, the circumstance of their so going upon the said premises being at the time wholly unknown to said exceptants, and no notice of their intention of so doing being given them, although the interests of exceptants are in every respect largely adverse to the interests represented by the attorney, who, as aforesaid, took said commissioners upon said premises.

X. Great unfairness and partiality shown and manifested by said commissioners; they having immediately upon their return from their visit to said premises, with the said attorney, notified the parties in interest, resident in Honesdale, to appear before them at the Allen House about two hours thereafter, and at said hearing, unjustly and improperly refusing to hear the evidence of any witnesses whatever, and also refusing to go upon the premises a second time, in order that such of the creditors as were dissatisfied with the circumstances connected with their previous visit thereto might go with the said commissioners and ascertain what land had been pointed out to them, and also present their views.

XI. Improper conduct upon the part of all of said commissioners, in making up said report hastily, imperfectly, unjustly, and without any apparent consideration or wish in the matter except to fulfil the wishes and demands of the mechanics' lien creditors; in not affording all the parties in interest an opportunity to be heard, and in making up the report wholly in the interest and according to the expressed wishes of the attorney who, as aforesaid, was alone with them in their first and only examination of the premises.

Upon dismissing these exceptions and confirming the report, the court below filed the following opinion:

"In August, 1884, the Honorable William H. Dimmick purchased a lot containing about 23 acres of land and commenced the erection of a large building, to be occupied as a summer hotel. Subsequently the Irving Cliff Hotel Company was organized and the lot of 23 acres was conveyed by Mr. Dimmick to this

hotel company. The curtilage to be covered by mechanics' lien and materialmen was not defined by the owner, but mechanics' liens for considerable amounts have been filed. The record shows also a judgment for purchase money given by Mr. Dimmick, which, with accumulated interest, amounts to between $1,600 and $1,700; and other judgments also were entered against Mr. Dimmick before his conveyance to the hotel company and after the erection of the building was commenced, amounting to about $8,000, which was shown to be for money borrowed, to be used in the erection of this building.

"In January last the mechanics' lien creditors presented a petition to the court asking for the appointment of commissioners to define the boundaries of this curtilage. Three commissioners were appointed, all of whom declined to serve. Three others were then, on the first of February, appointed, men whom the court believed to be fair and impartial and of good judgment. After considerable delay, by reason of the illness of one of the commissioners, and sickness in the family of another, and the severe weather of February, they reported, defining the boundaries of a curtilage containing $4\frac{1}{2}$ acres, giving no access from the hotel to any public road, but creating an easement on the 23 acres, for the gas, water, and sewer pipes, already laid, and subjecting this whole 23 acres to the right of the hotel property to lay any further or additional gas, sewer, or water pipes, proper or convenient for the use of said building. It would seem from this report that the commissioners were unable to designate any portion of the 23 acres which might be liberated from subserviency to this hotel building.

"This report was set aside because of the indefinite easement created. Another commission was then appointed. The commissioners were selected with very great care, in order to avoid all suspicion of prejudice against or favor toward one side or the other. Three men, living distant from each other, each man of very high standing in the community where he lived, were elected by the court because of its belief in their integrity, good judgment, and special fitness to pass upon the questions to be presented them. These three commissioners after notice of their appointment came together to the president judge for instruction. The acts of assembly bearing upon the subject were read and explained to them, and the purpose of this legislation was explained to them. They were informed that the lien of me-

chanics was primarily against the building into which their labor entered, and only against land because without land the lien against the building would be worthless; that judgment creditors had rights which must not be disregarded; that they were so to define the curtilage as to make the mechanics' lien effective, by embracing in it so much land as in their judgment was necessary for the ordinary and useful purposes of the building, but that they should not diminish the security of the judgment creditors by taking for the benefit of the mechanics' lien creditors any more land than was necessary for the enjoyment of the building for a summer hotel. The matter was discussed until the commissioners seemed fully to understand their duty. They reported, including the whole 23 acres in the curtilage.

"Exceptions to this report were filed and evidence taken, upon which we are asked to set it aside. We have examined this evidence carefully. It must be said of it that, taken alone, its weight is against the report of the commissioners and against the proposition that this whole 23 acres is necessary for the purposes of the hotel; but we do not think it is sufficient to overcome the judgment of three such men as the commissioners who have gone upon the premises for the express purpose of ascertaining how much land is necessary for use with this hotel building; especially when the last report of the commissioners is so strongly supported by the report of the former commissioners, who found that the entire lot must be made subservient to the hotel property. Both sets of commissioners examined the premises with this question directly in view. The witnesses who have testified have made no such examination, and while personally, with our indefinite knowledge of the premises, we are somewhat surprised at the report, it may be that more particular information would lead to the same conclusion reached by the commissioners. The law was too carefully explained to the commissioners to permit belief that they have misunderstood their duty.

"At the request of counsel for the mechanics' lien and judgment creditors and with the consent of all counsel, we have directed that a draft of the premises, showing the location of the buildings and their distances from each other, should be attached to and made a part of the commissioners' report.

"We know of no act of assembly, or order of court or practice, which requires that commissioners, to define boundaries of a curtilage, should note improvements. The draft now annexed to

the report shows substantially what the exceptants desire, excepting the description of the buildings; and the first three exceptions are dismissed.

"That some buildings, erected years ago, stood upon the lands did not prevent the commissioners from embracing these lands within the bounds of the curtilage, if such lands were necessary for the enjoyment of the hotel building. The existence of such buildings, their location, size, comparative value, etc., were all matters for the consideration of the commissioners. The fourth and sixth exceptions are dismissed.

"The fifth exception involves directly the question which by this act of assembly we were required to submit to the commissioners, and the exception is dismissed.

"The seventh is not properly an exception to any matter in the report, but only presents the fact that interests of judgment creditors are affected by the report.

"The eighth exception is dismissed. We do not recall any evidence to sustain it, but whether the fact be that the commissioners were sworn before or after viewing the premises, it is immaterial.

"The evidence does not, in our judgment, sustain the charge of misconduct against the commissioners, nor of partiality or unfairness, and the ninth and tenth exceptions are dismissed.

"And here, to prevent misconstruction, we desire to say that when the president judge called Mr. Waller into his chambers (as testified to by Mr. Waller), the commissioners, or one of them, had already informed him that Mr. Waller proposed to take or send them up to the hotel with his team, that they might view the premises, and Mr. Waller was called into the room by the judge for the purpose of suggesting to him and to the commissioners the prudence and propriety of taking with Mr. Waller some person who represented the adverse interests. Mr. Dimmick's name was suggested, if Mr. Waller intended going himself with the commissioners. This suggestion seemed to meet the approval of Mr. Waller and the commissioners, and they agreed to, and the evidence shows they did, invite Mr. Dimmick to go with them. It does not appear that any improper influence was brought to bear upon them, and they should not be convicted of misconduct.

"For the past three months these mechanics' lien creditors have been endeavoring to obtain a definition of boundaries of the

curtilage appurtenant to the hotel building, so that they may have process for the collection of their claims. If this report should be set aside, their remedy is postponed past the summer; and so far as we can now see, the property must lie idle for another year. Such delay would work great wrong to all parties in interest, and forbids that we should refuse our approval of this report, without clearer evidence against it than is presented, and the report is approved."

The judgment creditors thereupon took this writ, and assigned as error the action of the court below in setting aside the first report and confirming the second report.

*Edward O. Hamlin*, for plaintiffs in error.—This proceeding, so far as it affected the rights of the creditors who received no notice, is in violation of the principle that forbids an adjudication without giving an opportunity of being heard.

The act of assembly, it is true, does not in terms require that notice be given the parties interested. Neither, however, does the road law require such notice; yet it is well settled that notice must be given to landowners before any valid assessment of damages can be made by road viewers.

The general principle is uniformly recognized that notice and opportunity to be heard are due to all whose rights are to be affected, in any proceeding, whether such notice be specifically provided for by statute, or not.

The principles that govern the subjection of a building already completed to a lien for the erection of other buildings, on the same lot or piece of land, have been settled by a variety of decisions.

When the land and the several structures erected upon it are intended for a united enjoyment, and are not capable of separation without injury. Lauman's Appeal, 8 Pa. 477.

When the new structure, detached from that already existing, would be comparatively valueless. Parrish's Appeal, 83 Pa. 111.

When the new structure is an accession to that already existing, largely increasing its productiveness and value. Id. 125.

The present case is an attempt upon the part of mechanics' lien creditors to subject buildings already existing to a lien for the construction of a new building, in total disregard of these principles.

An entire tract of land cannot be subjected to a lien for the construction of a building in no way necessary to the use and enjoyment of the greater portion of the tract, only a small part of which is required for the purposes of the building, particularly when such a lien will operate to exclude judgment creditors from recourse to any part of the tract. Under the mechanics' lien law of 1806 it was held that a farm or plantation (the extent of which does not appear) cannot be subjected to a mechanics' lien, for the erection of a barn, to the exclusion of judgment creditors. Werth v. Werth, 2 Rawle, 151.

The act of 1806 did not designate the quantity of land subjected to the lien, or even provide that the land covered by the building should be subject to it. The act of 1836 provides that "the lien of such debt shall extend to the ground covered by such building, and to so much other ground immediately adjacent thereto, and belonging in like manner to the owner of such building, as may be necessary for the ordinary and usual purposes of such building."

The legislative intention in passing laws to secure a lien to mechanics and materialmen, on the buildings erected, must not by construction be carried beyond the design of the enactment, and extended to other buildings, on which no labor was bestowed, and for erecting which no commodities were furnished. The ground upon which the building stands must from necessity be held within the grasp of the lien, else it could afford no security; and to the immediate site is added the necessary curtilage, to be determined either before or after the sale. This curtilage embraces no more land than is requisite for the enjoyment of the building, taking into consideration the object of its erection; and in no event can it include other buildings on which no labor was bestowed or materials furnished, unless they are connected with and indispensable to the enjoyment of the main construction. Miller v. Lenhart, 1 Pearson (Pa.) 95.

Wismer's Estate, decided in the common pleas of Bucks county, 2 Pa. Co. Ct. 387, presents but a limited analogy to the present case, and goes beyond all limits heretofore recognized, as to the extent of the lien.

*E. C. Mumford* and *George S. Purdy,* for defendants in error.
—The commissioners alone were competent to judge what was

necessary to the convenient use of the building for the purpose for which it was designed. The formation and character of the land, the approaches, the location of the spring, of the water and gas pipes, as well as the sewer pipes, would necessarily enter into their consideration. By a careful examination of the grounds, with all of these things before them, they formed their opinion and made their report. The court says it does not find any evidence of misconduct or partiality on the part of the commissioners.

PER CURIAM:

This case coming before us as it does, on a certiorari, we can examine nothing but the record, and our inspection of that fails to reveal any irregularity. That the court had the power to set aside the report of the commissioners first appointed cannot be doubted; and as we have nothing by which to test the rectitude or wisdom of that act, we must decline to sustain the first assignment of error.

To the confirmation of the report of the second commission several exceptions have been taken. One is that there was no notice given to those interested of the time of the view. But this was not necessary. The act requires notice of the appointment of the commissioners, which, as the record shows, was properly given; but it requires no other notice. Another complaint is that the curtilage designated by the commissioners is larger than necessary for the use of the building: but as this was a matter resting in the discretion of the commissioners and the court, we cannot review their action. So whether the mechanics' lien is made to embrace more than the act of assembly warrants is a matter not now before us.

Decree affirmed.